**Roger WAITE, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant-Appellee.**

**No. 86–2214.**

United States Court of Appeals, Seventh Circuit.

Submitted April 8, 1987.[*]

Decided April 30, 1987.[**]

Opinion May 28, 1987.

As Amended June 1, 1987.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). The defendant-appellee has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

[**] This appeal was originally decided by unpublished order on April 30, 1987. *See* Circuit Rule 53. The Court has subsequently decided to issue the decision as an opinion.

Kim R. Genich, Madison, Wis., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel Reg. V. Dept. Health and Human Services, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, WOOD, and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

Roger Waite appeals the district court's judgment upholding the decision by the Secretary of Health and Human Services in which Waite was denied Social Security benefits. Waite challenges the Secretary's decision that he does not suffer an impairment that meets or equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. He also challenges the Secretary's conclusion that he is able to do some light and sedentary work with his limitations. Waite also argues that he has newly discovered evidence which warrants a remand for further consideration. We affirm.

I.

Waite, a thirty-eight-year-old former truck driver who has earned a general education diploma, was injured in a motorcycle accident on September 9, 1983. His injuries included a broken left leg, a dislocated left wrist, and a left temporal hematoma, all of which required surgery. His most serious injury, however, was to the nerve network in his left arm which left it completely and permanently paralyzed.

Waite was released from the hospital on December 29, 1983, walking with the use of a cane. An examination in February 1984 showed nearly complete recovery from all injuries except the left arm paralysis accompanied by some pain. It also revealed that his leg had essentially healed and that he had a full range of motion of the hip and knee. The report indicated that Waite was able to walk without a cane, although he was using one for additional stability.

Waite applied for benefits, and a hearing was held before an Administrative Law Judge (ALJ) on April 26, 1984. Waite testified that he had not worked since the accident and his daily activities were limited to watching television, reading, and visiting friends. He complained of pain in his paralyzed left arm and of occasional headaches. He also stated that he felt no pain in his leg, but that there was some stiffness. After the hearing, the ALJ received additional evidence, including a report of a vocational expert. The expert reported that someone with Waite's impairments, background, and education could perform certain light and sedentary occupations such as a retail sales clerk, a telephone operator, a ticket agent, a self-service gas station attendant, a crossing guard, and a security guard/doorkeeper.

The ALJ concluded in a written opinion on June 17, 1985 that Waite was not disabled within the meaning of the Act. The ALJ reasoned that Waite's impairment did not meet or exceed one of the list of specific impairments and that he was able to perform other work within the economy. Waite appeals, arguing that his impairments did meet certain listings or their equivalents and that the ALJ's analysis of his residual functional capacity was not supported by the record. He also alleges that newly discovered medical evidence demonstrates that he continues to suffer leg limitations, pain, and headaches so that

the case should be remanded to the Secretary for reconsideration.

## II.

Waite submits that he met the listed impairments of section 1.13 which requires benefits to be awarded for "soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.13. Waite argues that the "thrust" of listing 1.13 is the loss of the major function of an extremity which was not restored or expected to be restored within 12 months, and that he qualified under this listing because he permanently lost the use of his left arm. In support, Waite cites a letter from one of his treating physicians expressing the opinion that his impairments met listing 1.13.

■ We initially note that an ALJ is not bound by a doctor's conclusion that a claimant is "disabled" because he meets the requirements of a certain listing. *See Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir.1985); 20 C.F.R. § 404.1527 (physician's conclusions not dispositive). Moreover, we disagree with Waite's interpretation of listing 1.13. First, a different listing directly addresses the loss of function of an extremity. Section 1.09 involves the loss of function due to neurological deficits, and for benefits it requires the loss of both hands, both feet, or one hand and one foot. Waite's interpretation of listing 1.13 would place it in conflict with listing 1.09 because a claimant who has permanently lost the use of an extremity would qualify for benefits under listing 1.13, but he would not meet the more specific requirements of listing 1.09. Likewise, Waite's reading of the regulations would make the two listings duplicative because a claimant paralyzed in two extremities would qualify under both listings. We do not think such anomalous results were intended.

■ Instead, listing 1.13 clearly requires the imposition of a series of surgical procedures to restore major function of the extremity. Despite the lack of any decision interpreting this regulation, we agree with the district court and the Secretary's interpretation of this listing: it is directed at the loss of the use of one extremity, not in itself disabling under the regulations, where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures. This interpretation is supported by the phrases "staged surgical procedures" for "salvage and/or restoration." Under Waite's interpretation, this language would be unnecessary. If the regulations, as Waite claims, were intended to grant benefits to one who has lost the use of an extremity for twelve months or more, then the wording of the listing would have been that simple. Because Waite did not undergo a series of operations to restore the function of his left arm (everyone agreed at the outset that it was permanently lost), he did not meet the requirements of listing 1.13.

## III.

■ Waite claims that the ALJ erred in deciding whether his impairments were medically equivalent to a listed impairment, in violation of 20 C.F.R. § 404.1526. He first argues that the ALJ failed to consider whether his impairments were medically equivalent to any of those listed. In his findings, however, the ALJ stated, "The medical evidence establishes that the claimant has a loss of motor and sensory function of the left arm, but he does not have an impairment, or a combination of impairments listed, *or medically equal* to one listed in Appendix 1, Subpart P, of Social Security Regulations No. 4." (emphasis added). This is sufficient articulation to demonstrate that the ALJ considered the issue of medical equivalence. *See Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir.1985).

■ Waite also contends that the ALJ did not attempt to secure the opinion of one or more physicians designated by the Secretary to determine medical equivalence, contrary to the requirements of 20 C.F.R. § 404.1526(b). Yet the record contains an opinion of a state agency physician that the severity of Waite's impairments did not meet or equal any of the listings. Waite argues that this opinion was premature and therefore did not support the ALJ's conclusion because it was made on November 11, 1983, before much of the medical evidence existed. Nevertheless, the record reveals that the state agency reaffirmed its opinion on February 1, 1984 after reviewing the entire files of Waite's medical history. Hence, this argument is without merit.

Waite alleges that the record does not support the ALJ's conclusion that his injuries did not equal the listed impairments in section 1.13 or section 11.08. If the record as a whole contains substantial evidence to support the ALJ's factual determinations, however, then we must affirm unless there has been an error of law. *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985).

■ We have already demonstrated why Waite's injuries did not equal listing 1.13 because it requires a series of operations to restore an impaired limb, and Waite had no such operations. Moreover, the purpose of listing 1.13 is to allow a period of recovery for surgical restoration of an impaired limb, the functional loss of which is implicitly regarded as not disabling. Thus, no collection of Waite's impairments can be considered medically equivalent to this listing because the impairments themselves are unrelated to the purpose of this listing.

Waite also claims that he equaled the requirements of listing 11.08 for a finding of disability from spinal cord or nerve root lesions, due to any cause, resulting in significant and persistant disorganization of motor function in two extremities. He submits that his paralyzed left arm and his continual problems with his leg and head

injuries have resulted in the functional disorganization of two of his extremities, his left arm and leg.

■ There is no medical evidence in the record, however, that Waite has residual problems from his leg and head injuries that could be combined with his arm impairment so as to equal this listing. His treating physician stated in February 1984 that Waite had essentially normal function of the leg which was broken and that he had experienced "solid healing." The doctor also indicated that Waite had full range of motion from the left hip and knee, and that the leg was giving him no trouble. Although Waite points to the doctor's opinion that his impairments equaled the requirements of listing 11.08, he neglects to add the doctor's qualifying statement "that the lesion coming under 11.08 affects only one extremity and not two" as required by the regulation. Therefore, there is substantial evidence in the record that Waite's impairments do not equal listing 11.08.[1]

## IV.

Waite avers that the Secretary erred in determining whether he could do other work despite his limitations because the ALJ failed to make a specific finding of his residual functional capacity, in violation of 20 C.F.R. § 404.1520(f). We examine the ALJ's opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions. *Orlando*, 776 F.2d at 213. An ALJ may recite his determinations and supporting reasoning in either the findings or the discussion section of his opinion. *Id.*

■ Here, the ALJ discussed Waite's residual functional capacity at length in his opinion, specifically noting the extent of Waite's "residual permanent injury of a total loss of motor and sensory function of his non-dominant left upper extremity." The ALJ also noted the response of a vocational expert to a hypothetical question

---

1. Waite argues in his reply brief that his impairments equaled listing 1.09 (requiring loss of major function due to neurological deficits or instability in one hand and one foot), but his argument comes too late. Issues may not be raised on appeal for the first time in a reply brief as a ground for reversal. *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir.1985).

asking whether a one-handed person could perform any light or sedentary occupations which are available in significant numbers in the economy. This is sufficient consideration of Waite's residual functional capacity, or what work Waite can do despite his limitations. *Id.*

## V.

Waite alleges that the ALJ violated 20 C.F.R. § 404.1529 when he failed to consider his non-exertional impairments of pain and dizziness which he claims required him to use a cane. In a related argument, Waite claims that the hypothetical question posed to the vocational expert failed to include these impairments so that the expert's response did not correctly evaluate his residual functional capacity.

■ First, the ALJ specifically addressed Waite's complaints of pain in the discussion section of his order, noting that Waite complained of periodic headaches and pain in his left arm. This reveals that the ALJ sufficiently considered the evidence of pain, as the statute requires him to do. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985).

■ The vocational expert also was aware of Waite's complaints of pain when he answered the hypothetical question on what types of jobs Waite could perform despite his limitations. The expert indicated that he had been provided copies of all medical reports, that he could read and understand them, and that he had reviewed and was familiar with the exhibits in this case, and there is nothing to indicate that the expert did not consider all of the information available to him. Thus, the record supports the conclusion that the expert considered any complaints of pain in his response even if the hypothetical question did not expressly indicate pain.

■ Second, we note that the hearing in this case was held only seven months after Waite's accident. While Waite complained of pain and dizziness at the hearing, the record as a whole reveals that except for the permanent loss of the use of his left arm, Waite was expected to recover fully from all other injuries and impairments within twelve months of the date of his accident. This view was supported by an evaluation of one of Waite's treating physicians on September 14, 1984, almost one year after the accident, in which he noted that Waite had lost the use of one arm and that Waite's degree of disability "could be considered equivalent to that of having amputation of the left upper extremity at the shoulder without use of a prosthesis." Thus, when the ALJ entered his decision on June 17, 1985, he was entitled to conclude that Waite had a single impairment, the loss of his non-dominant left arm, and that his non-exertional impairments did not meet the twelve-month durational period of 42 U.S.C. § 423(d)(1)(A).

## VI.

Finally, Waite urges that there was newly discovered medical evidence which warranted consideration by the Secretary. The evidence consists of an evaluation by a chiropractor which began on September 11, 1985, and Waite alleges that it shows that he continues to suffer from leg limitations, pain, and headaches. This report was initially introduced in Waite's reply brief in district court which was filed on May 18, 1986.

■ Under 42 U.S.C. § 405(g), a court is permitted to remand a case to the Secretary to substantiate a claim of disability only if the evidence is new, material and not cumulative, and there was good cause for failing to incorporate the evidence in a prior proceeding. *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir.1986). Although Waite offers only the conclusory statement that the evidence was material, we need not decide this issue because he has not demonstrated good cause for not having offered it in a prior proceeding. At least some of the evidence was available before the Appeals Council reviewed Waite's case on October 31, 1985. Nothing in the record indicates that Waite was insufficiently informed in procedural matters to make a supplemental submission to the Appeals Council, and he has failed to meet his burden of showing good cause for failure to

incorporate the evidence into the record. *See Kindred v. Heckler,* 595 F.Supp. 563, 567 (N.D.Ill.1984).

Therefore, Waite's denial of benefits by the Secretary is

AFFIRMED.